UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **ERICA TORRES** *on behalf of* **A.M.L.,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**COMMISSIONER OF SOCIAL** )<br>**SECURITY,** )<br>)<br>**Defendant.** ) | CAUSE NO. 1:24-cv-00466-ALT |

**OPINION AND ORDER**

Plaintiff Erica Torres on behalf of A.M.L ("AML") appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application under the Social Security Act (the "Act") for child's Supplemental Security Income ("SSI"). (ECF 1). Because neither of Plaintiff's two arguments advanced in this appeal merits remand, the Commissioner's decision will be AFFIRMED.

**I. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff applied for child's SSI in August 2021, alleging disability as of August 29, 2007. (ECF 6 Administrative Record ("AR") 15, 223-27).[1] Plaintiff's claim was denied initially and upon reconsideration. (AR 15, 89, 97). On June 26, 2023, administrative law judge ("ALJ") Deborah Giesen conducted an administrative hearing, at which AML and Torres, who were represented by counsel, testified. (AR 43-82). On September 22, 2023, the ALJ rendered an unfavorable decision to Plaintiff, concluding that AML was not disabled because he did not meet, medically equal, or functionally equal a listing by having either "marked" limitations in two

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

domains of childhood functioning or an "extreme" limitation in one domain of childhood functioning. (AR 15-28). The Appeals Council denied Plaintiff's request for review (AR 6-11), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On November 1, 2024, Plaintiff filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). Plaintiff advances two arguments in this appeal: (1) the ALJ failed to properly evaluate all medical opinions of record; and (2) the ALJ failed to properly develop the record. (ECF 9 at 1).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long

as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant under the age of eighteen must establish that the claimant "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner evaluates disability claims for children pursuant to a three-step evaluation process, requiring consideration of the following issues, in sequence: "(1) is the child engaged in substantial gainful activity? (2) does the child have a medically determinable impairment that is severe? and, (3) do these impairments meet, medically equal, or . . . functionally equal one of a list of severe impairments set forth in the Listings [20 C.F.R. Part 416, Subpart P, Appendix 1]?" *Edwards ex rel. L.T. v. Colvin*, No. 12 C 7539, 2013 WL 3934228, at *1 (N.D. Ill. July 30, 2013) (citing 20 C.F.R. §§ 416.924(b)-(d)); *see also Mara S. ex rel. C.S. v. Kijakazi*, No. 19-cv-8015, 2022 WL 4329033, at *1 (N.D. Ill. Sept. 19, 2022). An affirmative answer at step one, or a negative answer at steps two or three, ends the inquiry and leads to a determination that the child is not disabled. *See Mara S. ex rel. C.S.*, 2022 WL 4329033, at *1; *see also Edwards ex rel. L.T.*, 2013 WL 3934228, at *1.

The question of whether the child's impairment "functionally equals" a listing is unique to child disability claims. *Edwards ex rel. L.T.*, 2013 WL 3934228, at *1 (citation omitted). The ALJ "will look at how appropriately, effectively, and independently [the child] perform[s] [the child's] activities compared to the performance of other children [the same age] who do not have impairments." 20 C.F.R. § 416.926a(b). To find that an impairment functionally equals a listing, the ALJ must consider the impairment's severity in six age-appropriate domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Mara S. ex rel. C.S.*, 2022 WL 4329033, at *1 (citing 20 C.F.R. § 416.926a(b)). If the ALJ finds a "marked" limitation in at least two of the domains or an "extreme" limitation in one domain, the child functionally equals a listing. *Id.* (citing 20 C.F.R. § 416.926a(d)). A marked limitation in a domain means the child's "impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is "more than moderate" but "less than extreme." *Id.* An extreme limitation in a domain means the child's "impairment(s) interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An extreme limitation is "more than marked" and represents the rating given "to the worst limitations." *Id.*

The burden of proof lies with the claimant at each step of the process. *See R.J. ex rel. Taylor v. Colvin*, No. 1:11-cv-01001-SEB-DKL, 2014 WL 1328166, at *2 (S.D. Ind. Mar. 28, 2014). "If a child's impairments pass all three steps, and satisfies the duration requirement, then [the child] is determined to be disabled." *Id.*

4

*B. The Commissioner's Final Decision*

In the Commissioner's final decision, the ALJ noted at the outset that AML was a "school-age child" when the application was filed in August 2021, and an "adolescent" when the ALJ issued her decision in September 2023. (AR 16). At step one of the three-step analysis, the ALJ found that AML had not engaged in substantial gainful activity since the application date. (*Id.*). At step two, the ALJ found that AML had the following severe impairments: asthma, bronchopulmonary dysplasia, subglottic stenosis, attention deficit hyperactivity disorder (ADHD), oppositional defiance disorder, and adjustment disorder. (*Id.*). At step three, the ALJ concluded that AML did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a listing under 20 C.F.R. Part 416, Subpart P, Appendix 1. (AR 17, 19). Therefore, Plaintiff's application for child's SSI was denied. (AR 28).

*C. The Medical Opinions*

Plaintiff first argues that the ALJ failed to properly evaluate the medical opinions of record. (ECF 9 at 3-6). Specifically, in the opening brief Plaintiff points to solely an April 20, 2022, bronchodilation test (*id.* at 3-6), but Plaintiff tacks on the opinions of the state agency doctors in the reply brief (ECF 16 at 3-4). Of course, "arguments raised for the first time in a reply brief are deemed waived." *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012 (citations omitted)); *Carpenter v. Berryhill*, No. 1:16-cv-0833-DKL-WTL, 2017 WL 1074573, at *1 (S.D. Ind. Mar. 22, 2017).

1. <u>Applicable Regulation</u>.

In considering medical opinion evidence, an ALJ is to assess the factors set forth in 20 C.F.R. § 416.920c(c) when determining the proper weight to apply to the opinion. These factors

are: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. § 416.920c(c); *see, e.g.*, *Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021). "Although the ALJ must consider all of these factors, [she] need only explain how [she] considered supportability and consistency." *Kaehr v. Saul*, No. 3:19-CV-1171-PPS, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021) (citations omitted).

2. The April 2022 Bronchodilation Test

Plaintiff argues that the ALJ committed reversible error by "fail[ing] to evaluate the persuasiveness of" the results of the bronchodilation test dated April 20, 2022, from Marion Health. (ECF 9 at 5 (citing AR 929-37)). Not so. These test results are akin to objective medical evidence, defined as "medical signs, laboratory findings, or both" 20 C.F.R. § 416.913(a)(1), rather than a medical opinion to which § 416.920c(c) would apply. *See, e.g.*, *C.B. v. O'Malley*, No. 22-cv-05579-LJC, 2024 WL 1329920, at *9 (N.D. Cal. Mar. 27, 2024) ("[T]he Court is not convinced that Section 404.1520c(b)(3) applies in this instance, given that the . . . stress test results are noted in [the claimant's] medical records and not necessarily a medical 'opinion.'"). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in [work-related abilities]." 20 C.F.R. 416.913(a)(2). Plaintiff does not point to any statement within the bronchodilation test that assigns AML functional limitations. *See Robert W. v. Saul*, No. 20-643, 2020 WL 6557727, at *4 (S.D. Ind. Nov. 9, 2020) ("Dr. Sozio's letter does not contain any sort of assessment of [the claimant's] vocationally-relevant functional limitations,

and therefore cannot properly be considered a 'medical opinion' under the regulations. Accordingly, the ALJ was not required to address the regulatory factors used to weigh medical opinions . . . ." (citations omitted)). Therefore, Plaintiff's attempt to seek remand due to a technical error under ™416.920c(c) is a nonstarter.

And as to the ALJ's duty to consider objective medical evidence, "an ALJ doesn't need to address every piece of evidence but he or she can't ignore a line of evidence supporting disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (citation omitted). Here, the ALJ acknowledged Plaintiff's claim that AML "gets winded very easily and uses inhalers." (AR 20; *see* AR 247). The ALJ then went on to consider the objective medical evidence, noting that AML's symptoms from asthma, bronchopulmonary dysplasia and, and subglottic stenosis were "well controlled with medication when he takes them regularly"; that he was "seen about twice a year by pulmonary medicine[,]" and that he was referred to an ear, nose, and throat doctor in January 2023. (AR 21).

Furthermore, the ALJ expressly considered AML's most recent pulmonary function test from January 2023, noting that "his FVC was 103 percent predicted and his FEV1 was 91 percent predicted. He was assessed with very mild small airway obstruction and his FEV1 was in the normal range." (*Id.* (citing AR 1464-71); *see also* AR 27). The ALJ acknowledged that AML had a "laryngoscope, bronchoscopy and tracheal dilation with placement of a tracheal stent for tracheal stenosis" in May 2023. (AR 21 (citations omitted); *see also* AR 27). The ALJ also noted that AML's "objective examinations have been mostly unremarkable," and that his "lungs on physical examinations routinely showed they were clear to auscultations and he had no wheezes, rales, or rhonci and his oxygen saturation levels were consistently maintained well in to the 90s." (AR 21 (citing AR 847-48, 913, 945-47); *see also* AR 27). Ultimately, Plaintiff does not suggest,

much less show, how the more remote April 2022 bronchodilation test results constitute "an entire line of evidence that is contrary to [the ALJ's] decision." *Adams v. Astrue*, 1:06-CV-393 RM, 2009 WL 1404675, at *5 (N.D. Ind. May 18, 2009) (citations omitted). Therefore, the ALJ did not commit material error by failing to specifically discuss the April 2022 bronchodilation test.

3. The State Agency Doctor Opinions

Plaintiff argues for the first time in the reply brief that the ALJ's consideration of two state agency doctor opinions, which the ALJ found "generally persuasive[,]" is also flawed. (AR 28; *see* ECF 16 at 3). Plaintiff contends the ALJ erred by "failing to address the mandatory regulatory factors of supportability and consistency" with respect to these state agency doctor opinions. (ECF 16 at 3). But as explained above, Plaintiff has waived this argument by failing to raise it in the opening brief. *See Griffin*, 694 F.3d at 822.[2]

And even if Plaintiff had timely raised this argument, it would still fail. The state agency doctors did not find marked limitations in any domain (*see* AR 86-87, 93-94), and Plaintiff fails to cite any other medical opinion of record assigning AML greater limitations. "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [the] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *see also Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citing

---

[2] Confusingly, the Commissioner in his response brief responds to an argument that Plaintiff did not actually make in the opening brief—"that the ALJ did not sufficiently articulate her consideration of the prior administrative medical findings . . . ." (*Compare* ECF 13 at 6-7, *with* ECF 9). This appears to be the Commissioner's oversight, as the two pages cited by the Commissioner in Plaintiff's opening brief have nothing to do with such an argument. (*See* ECF 13 at 6 (citing "Pl. Br. at 8-9")).

8

20 C.F.R. § 416.912(c))). As the ALJ explained, she afforded AML "the benefit of all reasonable doubt especially considering the claimant's recent grades" when determining he had marked limitations in the domain of attending and completing tasks. (AR 28).

On the record presented, the Court finds no reversible error with the ALJ's consideration of the state agency doctor opinions. *See Weaver v. Berryhill*, 746 F. App'x 574, 578 (7th Cir. 2018) (deeming the ALJ's failure to discuss a doctor's opinion harmless error where the Court "can conclude with great confidence that the ALJ would reach the same decision on remand" (citation and internal quotation marks omitted)). Therefore, Plaintiff's first argument is unavailing.

*D. Development of the Record*

Plaintiff next argues that the ALJ did not properly develop the record because she failed to issue a subpoena, requested by Plaintiff, seeking additional medical records from Riley Hospital for Children. (ECF 9 at 6-8; *see* AR 324). This argument, too, is ultimately unpersuasive.

1. Applicable Regulation

The applicable regulation, 20 C.F.R. § 416.1450(d), provides, in relevant part:

> (1) When it is reasonably necessary for the full presentation of a case, an administrative law judge . . . , may, on his or her own initiative or at the request of a party, issue subpoenas for . . . the production of . . . records . . . that are material to an issue at the hearing.
>
> (2) Parties to a hearing who wish to subpoena documents . . . must file a written request for the issuance of a subpoena with the administrative law judge or at one of our offices at least 10 business days before the hearing date, unless you show that your circumstances meet the conditions described in § 416.1435(b).

2. The Subpoena Request

Plaintiff submitted a subpoena request to the ALJ on June 20, 2023, which was less than

ten business days in advance of the June 26, 2023, hearing. Therefore, the subpoena request was untimely.

Plaintiff argues, however, that her untimeliness did not bar the subpoena because she showed circumstances satisfying the condition in 20 C.F.R. § 416.1435(b)(3)(iv), which states:

> Some . . . unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to: . . . You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

In the June 20, 2023, letter to the ALJ requesting the subpoena, Plaintiff's counsel stated that "unusual, unexpected, and unavoidable circumstances beyond [their] control . . . prevented [them] from obtaining and submitting medical evidence from . . . Riley Hospital for Children[,]" and that "this evidence is expected to provide material proof of ongoing disability that cannot be obtained from another source." (AR 324). The letter, however, does not describe with any particularity what the records pertain to or why such records are material.

3. The Administrative Hearing

At the outset of the hearing on June 26, 2023, the ALJ questioned Plaintiff's attorney about the outstanding Riley Hospital records:

> ALJ:   . . . . On the 20th of June last week, I received a letter in the file indicating that there are outstanding records from Riley Hospital for Children. There were no dates in that letter. Is this for some kind of recent admission to the hospital?
>
> ATTY:  That was my understanding, Your Honor. . . . It's my understanding there was a[n] E.R. visit in the last week or two and that's what that's going to pertain to.
>
> ALJ:   Okay. Well, what were the E.R. visits for?
>
> . . . .
>
> ATTY: . . . It's my understanding it was related to . . . either an asthma exacerbation or some type of shortness of breath issues that he was having. . . . [I]t's not a new condition and I think it's going to be cumulative, but . . . it's there. And I think that

10

> . . . the reason . . . for the letter was to notify you, full disclosure of any evidence.
>
> . . . .
>
> ALJ: . . . So according to what you've been told, there were E.R. records . . . sometime after March, possibly in late May, early June, from Riley.
>
> ATTY: Correct.
>
> ALJ: All right. Well, when were they requested?
>
> ATTY: It looks like they were requested about two weeks ago.
>
> ALJ: Okay. I'll tell you what. I'll give you seven days to submit those.
>
> ATTY: Okay, thank you.
>
> . . . .
>
> ALJ: . . . . Just FYI, if you appear before me again, don't count on me allowing extra time or admitting evidence that wasn't timely noticed.
>
> ATTY: I understand. I will make sure it doesn't happen again.

(AR 48-52). Seven days later, on July 3, 2025, Plaintiff's counsel sent the ALJ a letter stating that Plaintiff had not yet received the outstanding records and requesting an extension of four additional weeks to submit them (AR 326), which the ALJ afforded (AR 15).

4. <u>Analysis</u>

In her decision, the ALJ addressed Plaintiff's failure to submit the additional Riley Hospital records, stating:

> The claimant submitted or informed the undersigned about additional written evidence less than five business days before the scheduled hearing date. A claimant must inform us about or submit written evidence at least five business days before the date of the scheduled hearing, unless one of the circumstances set forth in 20 CFR 416.1435(b) applies. The claimant's representative untimely submitted a letter after five business days on June 20, 2023 regarding outstanding records from Riley Hospital (Ex. B18E). The claimant was granted seven days to submit the records from Riley Hospital. . . . The claimant's representative submitted a letter on July 3, 2023 requesting an additional four weeks to submit the records from Riley Hospital. The claimant was granted until July 31, 2023 to submit the additional

11

>records. As of the date of this decision, neither the records from Riley Hospital nor any other records have been submitted.

(AR 15). Plaintiff now argues that the ALJ materially erred by failing to issue the subpoena to Riley Hospital that her counsel requested in June 2023.[3]

The ALJ is not required to issue a subpoena "simply upon demand" of a party. *Hughes v. Apfel*, No. NA 99-97-C H/G, 2000 WL 684270, at *3 (S.D. Ind. May 24, 2000) (citing *Butera v. Apfel*, 173 F.3d 1049, 1057-58 (7th Cir. 1999)). Rather, an ALJ "may" issue a subpoena "[w]hen it is reasonably necessary for the full presentation of a case" and when certain "facts could not be proven without issuing a subpoena." 20 C.F.R. § 416.1450(d)(1), (2). "A party's allegation that a subpoena is necessary does 'not automatically make it so.'" *Dwight W.B. v. Kijakazi*, No. 1:20-cv-02048-JPH-DML, 2022 WL 985733, at *2 (S.D. Ind. Mar. 31, 2022) (quoting *Krell v. Saul*, 931 F.3d 582, 586 (7th Cir. 2019)). The party instead must "state the important facts that the . . . document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." *Butera*, 173 F.3d at 1058 (quoting 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2)).

Plaintiff has not identified the facts Plaintiff expected to prove by the Riley Hospital records that could not be proven without issuing a subpoena. In fact, at the hearing, Plaintiff's counsel stated that it was his understanding the records were related to a recent emergency room visit for an exacerbation of AML's existing conditions, that is, "not a new condition[,]" and would be "cumulative[.]" (AR 49). Thus, Plaintiff's counsel essentially *conceded* at the hearing that the emergency room records were not necessary for the full presentation of the case. Given this record, the ALJ's decision not to issue the subpoena requested by Plaintiff's counsel was reasonable. *See Burton v. Barnhart*, 43 F. App'x 991, 995 (7th Cir. 2002) (concluding that the

---

[3] The Commissioner had previously sent a records request to Riley Hospital in March 2022 and received a response that no responsive records existed. (*See* AR 922-27).

ALJ had reasonable grounds not to issue a subpoena where the claimant did not specify how issuing the subpoena would have affected the outcome of the case). Therefore, Plaintiff's argument that the ALJ failed to adequately develop the record by issuing a subpoena is without merit, and the ALJ's decision will be affirmed.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Plaintiff.

SO ORDERED.

Entered this 22nd day of December 2025.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge